UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/5/21

Brownstone Investment Group LLC,

Plaintiff,

–v–

Bonner & Partners, LLC, et al.,

Defendants.

20-cv-7351 (AJN)

MEMORANDUM OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Brownstone Investment Group LLC brings multiple trademark infringement, trademark dilution, and unfair competition claims against Bonner & Partners, LLC and Jeff Brown. Now before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). Dkt. No. 27. For the reasons articulated below, Defendants' motion is GRANTED.

**I. BACKGROUND**

Plaintiff Brownstone Investment Group LLC is a limited liability company with its principal place of business in New York. Am. Compl. ¶ 3. It is a "well-established financial services company providing, *inter alia*, funds investment and investment fund management services and securities trading services." *Id.* ¶ 1. Plaintiff has two federally registered trademarks—BROWNSTONE and BROWNSTONE ASSET MANAGEMENT—that it has used to identify its services since at least December 2004. *Id.* ¶¶ 10–12. Plaintiff alleges that these trademarks "have developed substantial and valuable goodwill." *Id.* ¶ 1.

Defendant Bonner & Partners, LLC is a Maryland limited liability company with its principal place of business in Delray Beach, Florida. *Id.* ¶ 4. Defendant Jeff Brown is an

individual who is domiciled in a state other than New York. *Id.* ¶ 5. Bonner offers financial services and publishes newsletters under various brands, including BROWNSTONE RESEARCH. *Id.* ¶ 1; Cohen Decl. ¶¶ 3–4, Dkt. No. 29. The BROWNSTONE RESEARCH newsletter is named after individual Defendant Brown. Brown Decl. ¶ 3, Dkt. No. 30. The newsletter, website, and other related communications to purchasers "prominently display[] [Defendant Brown's] name and likeness." Am. Compl. ¶ 17. The Defendants' promotional materials state that individual Brown is the "Founder and Chief Investment Analyst" of Brownstone Research. *Id.* However, a declaration submitted by Brown notes that he is an "editor" for Bonner—not an "owner, officer, or director of Bonner"—and that he does "not exercise operational control over Bonner or its BROWNSTONE RESEARCH franchise." Brown Decl. ¶¶ 1–4.

Brownstone states that Defendants' activities have "already caused substantial actual confusion between Brownstone and [Bonner]." Am. Compl. ¶ 1. For example, Brownstone first became aware of Bonner's BROWNSTONE RESEARCH activities in July 2020 when an individual mistakenly called Brownstone's business asking to speak with Jeff Brown. *Id.* ¶ 23. Brownstone has received other calls from confused consumers, including a call from an area code located in New York. *Id.* ¶ 24.

Plaintiff filed its initial complaint in September 2020. Dkt. No. 1. Defendants subsequently filed a motion to dismiss for lack of jurisdiction or alternatively for failure to state a claim on December 11, 2020. Dkt. No. 17. On December 16, 2020, a paralegal employed by Plaintiff's law firm purchased a product on Bonner's website. Am. Compl. ¶ 34. To purchase the item, the paralegal was "required to enter his residential address and email on the website"—in particular he indicated that he was a New York Resident using a drop-down menu. *Id.*

Following this "subscription purchase," the paralegal has received email notifications and solicitations. *Id.* ¶ 36. On January 4, 2021, an officer of Plaintiff, "received a targeted ad from 'The Legacy Report' that included a hyperlink to a domain titled 'thelegacyreport.com.'" *Id.* ¶ 38. After clicking on this first hyperlink and then a second hyperlink, the officer was taken to brownstoneresearch.com and offered to purchase products and services. *Id.*

Plaintiff filed a letter on December 23, 2020, stating their intent to file an amended complaint in response to Defendants' motion to dismiss by January 8, 2020. Dkt. No. 22. Plaintiff did so, including the additional allegations involving the paralegal and officer. Dkt. No. 23. Defendants filed a second motion to dismiss for lack of personal jurisdiction and motion to dismiss the amended complaint as untimely on January 22, 2021. Dkt. No. 27. Plaintiff opposed this motion and cross-moved for leave to file the amended complaint that it previously filed on January 8, 2020. Dkt. No. 34. Notably, Plaintiff decided not move for jurisdictional discovery. *See* Dkt. No. 33. After Defendants' motion to dismiss was fully briefed, Plaintiff filed for a preliminary injunction, Dkt. No. 42, to which Defendants requested a stay on briefing and discovery until this Court resolved the pending motion to dismiss, Dkt. No. 47.

Before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Dkt. No. 27. For the reasons stated below, the motion is GRANTED.

## II. LEGAL STANDARD

Whether there is personal jurisdiction is a "threshold matter" that should usually precede determination of the merits. *In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 267–68 (2d Cir. 2001). When a defendant moves to "dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic*

*Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). "If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (internal quotation marks omitted). At this "preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Id.* (internal quotation marks omitted). These allegations "must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks omitted). The Court will "constru[e] all pleadings and affidavits in the light most favorable to the plaintiff and resolv[e] all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).

**III. DISCUSSION**

The Court engages in a two-step analysis to determine whether it has personal jurisdiction over a defendant: it (1) applies the long-arm statute of the forum state and then (2) analyzes whether the exercise of that personal jurisdiction "comports with the Due Process Clause." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010). Plaintiff argues that the Court has personal jurisdiction over Defendants based on two provisions of the New York long-arm statute—C.P.L.R. §§ 302(a)(1) and (a)(3). For the following reasons, the Court concludes that it does not have personal jurisdiction over Defendants under either

provision of the New York long-arm statute. It also finds that it does not have specific jurisdiction over individual Defendant Brown.[1]

**A. C.P.L.R. § 302(a)(1)**

Section 302(a)(1) permits the Court to exercise personal jurisdiction over a non-domiciliary "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). The "jurisdictional net" cast by this subsection reaches those defendants who, under the totality of circumstances, "purposefully avail[] [themselves] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its law." *Mattel, Inc. v. Adventure Apparel*, No. 00-cv-4085 (RWS), 2001 WL 286728, at *2 (S.D.N.Y. Mar. 22, 2001) (citation and internal brackets omitted).

Courts have found personal jurisdiction stemming from generally available interactive websites based on proof of one transaction in New York, "even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Spin Master Ltd. v. 158*, No. 18-cv-1774 (LJL), 2020 WL 5350541, at *4 (S.D.N.Y. Sept. 4, 2020) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010)). Section 302(a)(1) is a "single act statute." *Id.* Defendants' website is available in New York and allows purchases by New York consumers. *See* Am. Compl. ¶ 33 (noting the availability of New York as an option for billing on the website). In an attempt to establish a prima facie case of personal jurisdiction under § 302(a)(1), Plaintiff generally claims that Defendants "have sold and distributed their

---

[1] Defendants also urge the Court to reject Plaintiff's amended complaint as untimely. Because the Court finds even considering the additionally pled allegations that Plaintiff fails to establish personal jurisdiction, it need not address this issue.

infringing products to numerous other consumers in the State of New York and have derived substantial revenue therefrom." *Id.* ¶ 37. However, the only actual New York purchase alleged by Plaintiff is the purchase by its paralegal on December 16, 2020. *Id.* ¶¶ 34–36. Because Plaintiff's general assertions are legally conclusory and thus insufficient, *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), the key inquiry is whether this Court may consider the purchase by Plaintiff's paralegal in December 2020 as sufficient to demonstrate the requisite "single act" under § 302(a)(1). This Court determines that such evidence is insufficient without evidence of other New York transactions.

First, "[o]nly pre-litigation contacts are relevant to the jurisdictional question." *Hearst Corp. v. Goldberger*, No. 96 Civ. 3620, 1997 WL 97097, at *11–12 (S.D.N.Y. Feb. 26, 1997) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir.), *cert denied*, 117 S. Ct. 508 (1996)). Plaintiff's argument that an amended complaint—where Plaintiff first pled the paralegal's transaction—relates back to the original complaint is thus inapposite to the question of whether the transaction occurred before litigation commenced. *See* Dkt. No. 35 at 18–19. Second, "the vast weight of authority is that a finding of personal jurisdiction may not rest solely on an act . . . instigated by a plaintiff." *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 623–24 (S.D.N.Y. 2013). As noted above, the only actual transaction Plaintiff alleges is that of its paralegal. Am. Compl. ¶¶ 34–36. Finally, "courts have concluded that in cases where . . . plaintiffs' causes of action are founded on notions of consumer confusion," it is "improper to rely on a transaction—for jurisdictional purposes—in which the purchaser obviously was not confused as to the source of the merchandise." *Buccellati Holding Italia SPA*, 935 F. Supp. 2d at 624; *see also ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d

81, 88 (E.D.N.Y. 2006). Plaintiff's paralegal was clearly not confused when she purchased one of Defendants' subscriptions.

The cases cited by Plaintiff are not contrary to these holdings. In *Chloe v. Queen Bee of Beverly Hills, LLC*, for example, there was evidence of "fifty-two separate transactions in which merchandise was shipped into New York." 616 F.3d at 166. And in each of the other cases cited by Plaintiff, the contacts occurred pre-litigation, unlike the instant transaction. *See, e.g.*, *Poof-Slinky, LLC v. A.S. Plastic Toys Co.*, No. 19 Civ. 9399 (ER), 2020 WL 5350537, at *2 (S.D.N.Y. Sept. 4, 2020). Thus, the allegations do not support a prima facie showing of jurisdiction.

Plaintiff's remaining allegations are insufficient to demonstrate that Defendants "purposefully avail[] [themselves] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its law." *Mattel, Inc. v*, 2001 WL 286728, at *2. Plaintiff points to its officer's interaction with an ad for the "legacyreport.com" as evidence that Defendants "have deliberately targeted consumers in New York through location-specific advertisements." Dkt. No. 35 at 16 (citing Am. Compl. ¶ 38). While at this "preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations," *Dorchester Fin. Sec., Inc.*, 722 F.3d at 85, these allegations "must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks omitted). Here, Defendants supplied an affidavit explaining that Bronner's "advertisements are driven by a user's search or browsing history, *not* location, to determine who receives such ads." Dkt. No. 28 (citing Cohen Decl. ¶¶ 9–10). In light of this affidavit, Plaintiff's inference regarding the cause of the officer's interaction with the ad is insufficient to confer jurisdiction under § 302(a)(1).

Finally, Plaintiff pleads that a "subscriber to Jeff Brown's newsletter" with a New York area code called their offices. Am Compl. ¶ 24 (internal quotation marks omitted). Plaintiff does not appear to employ this incident to establish that Defendants "transact[] any business within the state." N.Y. C.P.L.R. § 302(a)(1). Rather, the incident is pled as an example of consumer confusion. Am. Compl. ¶ 24 ("A substantial number of other instances of actual confusion have come to Brownstone's attention in the short time since the initial instance."). This makes sense as the call alone is insufficient to plausibly allege a New York transaction. Even assuming the New York area code connotes a New York consumer, the allegation does not plead that the caller identified themselves as a customer—indeed, brownstoneresearch.com offers subscriptions to free newsletters. Accordingly, there is no personal jurisdiction over Defendants pursuant to § 302(a)(1).

**B. C.P.L.R. § 302(a)(3)**

Section 302(a)(3) permits the Court to exercise personal jurisdiction over a non-domiciliary who "commits a tortious act within the state causing injury to person or property within the state . . . , if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.L.P.R § 302(a)(3). For the reasons stated above, Plaintiff has failed to establish that Defendants "regularly do or solicit business in New York," N.Y. C.L.P.R. § 302(a)(3)(i).

As for jurisdiction under § 302(a)(3)(ii), "New York courts have asserted that the simple likelihood or foreseeability that a defendant's product will find its way into New York" is

insufficient, "and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (internal quotation marks omitted). Thus, courts look for "tangible manifestations" of an "intent to target New York." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 423–24 (S.D.N.Y. 2009). Plaintiff's allegations similarly fall short here. Again putting to the side Plaintiff's manufactured sale post-litigation, Plaintiff merely alleges that Defendants' website is available to consumers in New York. *See Bowman v. Winger*, No. 14 Civ. 3428 (AT), 2015 WL 1639255, at *2–3 (S.D.N.Y. Mar. 25, 2015). It does not allege any "tangible manifestations." *See Royalty Network Inc.*, 638 F. Supp. 2d at 424. Thus, jurisdiction is not proper under § 302(a)(3).

**C. Specific Jurisdiction as to Defendant Brown**

The parties do not identify which provision of New York's long-arm statute specifically applies to Defendant Brown. However, given that Plaintiff does not allege that Brown personally engaged in any business in New York,[2] personal jurisdiction must rest on an agency theory under § 302(a)(1) or (a)(3). *See Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 647 (S.D.N.Y. 2008).

To do so, Plaintiff must show that the corporate defendant Bonner "engaged in purposeful activities in this State in relation to [Plaintiff's] transaction for the benefit of and with the knowledge and consent of the [individual defendant] and that the [individual defendant] exercised some control over [the corporation] in the matter." *Id.* (alterations in original) (citation

---

[2] Plaintiff's allegation that Bonner's email notifications and solicitations are "signed by Brown or purport to be sent by Brown personally" is insufficient. Am. Compl. ¶ 36. As controverted by Defendants' affidavit, such marketing materials are not sent "personally" by Brown. Brown Decl. ¶ 6; *see also* Dkt. No. 23 at 23, Exh. C (showing marketing email from "feedback@e.brownstoneresearch.com"). Moreover, these emails were sent only after Plaintiff's officer navigated to Defendants' website. *See* Am. Compl. ¶ 36.

omitted) (noting the individual Defendant must be the "primary actor"). Such an argument fails outright because Plaintiff has failed to demonstrate that Defendant Bonner has "transacted business" in New York, *see* § 302(a)(1); "regularly does or solicits business" in New York, *see* § 302(a)(3)(i); or purposefully availed itself of the benefits and laws of New York, *see* § 302(a)(3)(ii). Thus, even assuming Plaintiff's allegations are sufficient to show that Brown was a "primary actor" in orchestrating Defendants' alleged New York contacts, *Arma*, 591 F. Supp. 2d at 647, there are legally insufficient contacts in this case. Thus, exercising personal jurisdiction over individual defendant Brown is improper.

**D. Request to transfer**

Finally, Plaintiff cursorily requests that this Court transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1631, if personal jurisdiction is found to be lacking. *See* Dkt. No. 35 at 27 & n.10. While the Southern District of Florida may be a court "in which the action . . . could have been brought at the time it was filed," Plaintiff fails to address the second prong of the inquiry under § 1631—whether the transfer "is in the interest of justice." 28 U.S.C. § 1631. In the absence of argument on this point, the Court declines to grant Plaintiff's request.

**IV. CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is GRANTED. This action is dismissed for lack of personal jurisdiction. All other pending motions are denied as moot. The Clerk of Court is respectfully directed to enter judgment and close the case.

This resolves Dkt. Nos. 17, 27, 34, 42, 47, and 56.

SO ORDERED.

Dated: August 5, 2021
New York, New York

ALISON J. NATHAN
United States District Judge